1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MACARIO BELEN DAGDAGAN,

11              Plaintiff,                    No. CIV S-08-0922 GEB GGH

12        vs.

13   CITY OF VALLEJO, et al.,

14              Defendants.                   ORDER

15   _____/

16   *Introduction*

17              On November 6, 2009, this court issued a summary order concerning plaintiff's

18   motion to compel, and indicated that a more detailed order [and memorandum] would follow.

19   The court will expand its analysis in two areas:

20   1.  Production of internal affairs reports related to complaints in other matters;

21   2.  Use of a defendant's employee by plaintiff for purposes of acquiring expert testimony.

22   *Background*

23              Plaintiff alleges in this case that the individual police officers entered his

24   residence without a warrant or probable cause.  During the events that followed, plaintiff was

25   tasered, and according to plaintiff, subjected to excessive force such that his neck was broken

26   rendering him permanently disabled.  Further, plaintiff alleges that the City itself is liable for

1

1   improper supervision, training, and because it ratified the officer's actions.  Plaintiff seeks relief

2   pursuant to 42 U.S.C. section 1983 as well as various state law claims.  Defendants deny

3   plaintiff's allegations; however, the substance of plaintiff's case has not been dismissed up to this

4   point.

5   *Discussion*

6       A.  Internal Affairs Reports

7           Plaintiff sought internal affairs reports relating to citizen complaints alleging

8   excessive force and unlawful entry (Request for Production 22).  The City objected on grounds

9   that responding would violate "confidential" and "privacy" privileges.  The City also related, not

10  waiving objections, that it did not organize citizen complaints by year, and therefore, no

11  production could be required.

12          During the meet and confer, and again at hearing, the City's problems with

13  ascertaining citizen complaints by year dissipated.  The court determined at hearing that the City

14  would be required to allow plaintiff's counsel to view citizen complaints filed in the previous

15  two years.[1]  Plaintiff's counsel was to identify those files of interest, and the City would provide

16  those files for in camera review.  A number of complaints were presented to the court; the

17  undersigned has reviewed every one of them.

18          The court is unsure that the City maintains its confidentiality objection in that it

19  was not briefed and referenced only by the vaguest citation to the Federal and State constitutions.

20  To the extent that the City has maintained such an objection pursuant to Sanchez v. City of Santa

21  Ana, 936 F.2d 1027, 1033-34 (9th Cir. 1990), it has been waived for insufficient support.  Kerr v.

22  United States District Court (N.D. Cal.), 511 F.2d 192, 198 (9th Cir. 1975).

23          The court notes the obviousness of the privacy objection, and that the City is

24  raising such on behalf of individuals in its capacity as holder of the documents.  In cases

25

26      [1] The City correctly interpreted the summary order in light of the discussion at hearing, and produced complaints filed two years prior to the filing of suit.

1  presenting 42 U.S.C. § 1983 civil rights claims concurrently with state law claims, courts

2  disagree about the extent to which state privilege law remains applicable in discovery disputes.

3  The Supreme Court explicitly noted in Jaffee that the issue is unsettled.  Jaffe v. Redmond, 518

4  U.S. 1, 15 n. 15, 116 S.Ct. 1923, 1931 (1996) (noting disagreement concerning the proper rule in

5  cases in which both federal and state claims are asserted in federal court).  This court has found

6  that in mixed federal and state claim cases, although federal law is ultimately binding, state

7  privilege law which is consistent with its federal equivalent significantly assists in applying

8  privilege law to discovery disputes.  See Pagano v. Oroville Hospital, 145 F.R.D. 683, 687

9  (E.D.Cal.1993); Martinez v. City of Stockton, 132 F.R.D. 677, 681-83 (E.D.Cal.1990); Cook v.

10  Yellow Freight, 132 F.R.D. 548 (E.D.Cal.1990). Other courts, however, disagree.  See, e.g.,

11  Jackson v. County of Sacramento, 175 F.R.D. 653, 654 (E.D.Cal.1997) (stating that

12  Pagano/Martinez/Cook have been overruled).[2]

13  _____ Pagano at 698 described useful criteria to judge whether a privacy interest is

14  unduly infringed.  In this case, the encroachment on the privacy of others is substantial in that

15  most associated with the process, especially the officers, understand that a certain degree of

16  confidentiality will attach to the complaint process.  Moreover, the undersigned is perplexed

17  about the usefulness of complaint information in this litigation.  Surely, for Monell purposes,

18  plaintiff must demonstrate some type of deficient policy, be it by pattern or ratification, in order

19

20  _____ [2] Jackson is, respectfully, simply wrong in its proposition that Jaffe overruled Pagano,

21  Martinez, and Cook. For starters, the cases were not referenced by Jaffe. More importantly, Jaffe itself expressly noted the disagreement on the extent to which federal privilege law was informed by its state law counterpart, and expressly held that it would not rule on the issue. "We note that

22  there is disagreement concerning the proper rule in cases such as this in which both federal and state claims are asserted in federal court and relevant evidence would be privileged under state

23  law but not under federal law....we express no opinion on the matter." Jaffe, 518 U.S. at 15 (n.15), 116 S.Ct. at 1931. Jackson is based on the questionable premise that the Supreme Court's

24  determination not to consider an issue impliedly overrules cases discussing the issue. The cases that have followed Jackson's erroneous interpretation of Jaffe, seemingly without reference to

25  footnote 15 in Jaffe, are likewise flawed in this respect. See Folb v. Motion Picture Indus. Etc., 16 F.Supp.2d 1164 (C.D.Cal.1998); Humphreys v. Regents of University of Cal., 2006 WL

26  335275 (N.D.Cal. 2006).

1   to recover against the City entity.  That is often accomplished, if possible, by demonstrating

2   repeated instances of deficient conduct.  Nevertheless, a review of the various complaints

3   submitted to the undersigned demonstrate facts discrete to each complaint situation and varying

4   individual officers against whom the complaint has been made.[3]  Although the complaints have a

5   common theme, the allegedly volcanic, enraged citizen versus the allegedly control-freak police

6   officers, sorting out the truth of these themes in this litigation to establish any accurate pattern

7   would involve an unreasonable expenditure of resources with costs imposed on the privacy of

8   those involved in the singular instances.  Finally, reviewing all the complaints indicates that the

9   City does take seriously claims of police misconduct; nothing in the review process establishes

10   even a fair possibility of white washing untoward conduct on the part of police officers.

11           For all of the above reasons, plaintiff's request to compel production of the

12   complaints submitted for in camera review is denied.

13          B.  Expert Questions Directed to an Employee of a Party Adversary

14            Plaintiff's counsel noticed "persons with knowledge" deposition pursuant to Fed.

15   R. Civ. P. 30(b)(6), i.e., supervisors within the City of Vallejo Police Department.  However,

16   plaintiff's counsel did not limit his questions to factual matters within the purview of these

17   witnesses, but asked them opinion questions on issues pertinent to this case which would only be

18   appropriate for those retained outside or inside experts who had reviewed the case for purpose of

19   testifying to such opinions in the litigation.

20            For example:

21        Q. ...Now, was the officers' decision to enter the apartment without a search
22        warrant and arrest warrant consistent with the training given by the Vallejo Police
           Department?

23

24        [3] The situations described in the various complaints, by and large, did not involve conduct
   inside someone's residence, often involved citizens under varying states of intoxication, and
25   involved different instigating factors.  The undersigned is not finding that the police officers used
   perfect control techniques in every situation, or did not confuse rudeness/ brusqueness for
26   appropriate control, but it will be nearly impossible to ferret out the true facts – facts which are
   collateral to the factual issues in this litigation.

Q.  Based on the training you received, may an officer arrest an individual in their own home without a warrant in the absence of exigent circumstances?

Q. An individual who clenches his fists near his waist but does not swing or strike at an officer, would that person qualify under the definition of passive resister?

The Federal Rules of Civil Procedure distinguish between those persons who are designated, testifying experts and those persons with expertise, not designated as testifying experts, who have performed some act in the normal course of their job duties, or who have some training in the issue at bar, pertinent to the facts of the litigation based on their expertise.  The former persons must be designated as Rule 26 experts and must prepare a report setting forth their opinions and the bases therefore.  See Torres v. City of Los Angeles, 548 F.3d 1197, 1212-1213 (9th Cir. 2008).  Other non-designated persons with expertise who performed an act based on that expertise that has significance to the litigation may be asked what they did and why they did it, and what they based the action upon, but the inquiry is limited to those past acts.  Moran v.Pittsburgh-Des Moines Steel Co., 6 F.R.D. 594 (W.D. Pa. 1947).[4]  Finally, even retained experts, much less employees of the entity defendant, are immune from Rule 26 expert inquiry if they have not been designated by a party to testify as an expert.  Mantolete v. Bolger, 96 F.R.D. 179, 181-182 (D. Ariz. 1982).[5]

---

[4] "It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness."  Advisory Committee Notes, Rule 26 subd. (b)(4), 1970 Amendments.

[5] " Subdivision (b)(4)(A) provides for discovery of an expert who is to testify at the trial. A party can require one who intends to use the expert to state the substance of the testimony that the expert is expected to give. The court may order further discovery, and it has ample power to regulate its timing and scope and to prevent abuse. Ordinarily, the order for further discovery shall compensate the expert for his time, and may compensate the party who intends to use the expert for past expenses reasonably incurred in obtaining facts or opinions from the expert. Those provisions are likely to discourage abusive practices.
Subdivision (b)(4)(B) deals with an expert who has been retained or specially employed by the party in anticipation of litigation or preparation for trial (thus excluding an expert who is simply a general employee of the party not specially employed on the case), but who is not expected to be called as a witness. Under its provisions, a party may discover facts known or

1        Take for example, the non-retained treating physician.  This person may be asked

2  about diagnoses of record and treatment performed; he may even be asked about a predictive

3  opinion recorded in the records; but he may not be asked to opine on expert matters in an abstract

4  or hypothetical sense.[6]  If this were not the rule, any party to a litigation could hijack in-house or

5  third party experts for free, and compel them to give the retained Rule 26 experts' testimony they

6  would otherwise have to pay for.  In the situation of a party's employee, a deposing counsel's

7  roaming about the entity seeking opinions for use in the litigation makes a bad situation even

8  worse.  There may well be attorney-client or work product problems that are encountered in

9  addition to the unfairness.  And, the fact that a witness has been improperly designated pursuant

10  to Rule 30(b)(6) to answer expert type questions does not make the questions any more

11  appropriate.

12        Plaintiff cites Detoy v. City of San Fransisco, 196 F.R.D. 362 (N.D. Cal. 2000) for

13  the proposition that he is allowed to ask Rule 30(b)(6) designated employees expert type

14  questions related to the case.  The case does not stand for that proposition.  The issues in that

15  case revolved about straying outside the Rule 30(b)(6) notices giving the areas/topics for

16  designated testimony, and the propriety of issuing instructions not to answer during a deposition

17

---

18  opinions held by such an expert only on a showing of exceptional circumstances under which it
is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by

19  other means.

        Subdivision (b)(4)(B) is concerned only with experts retained or specially consulted in

20  relation to trial preparation. Thus the subdivision precludes discovery against experts who were
informally consulted in preparation for trial, but not retained or specially employed. As an

21  ancillary procedure, a party may on a proper showing require the other party to name experts
retained or specially employed, but not those informally consulted."

22  Advisory Committee Notes, Rule 26 subd. (b)(4), 1970 Amendments

23        [6] For example – Dr. Treating Physician (not designated by a party to give opinions for the
purpose of the litigation), having reviewed the file, do you think the cause of the ailment was

24  exposure to Agent Orange?  Or, Dr. Treating Physician, tell me all you can about the possibility
of cancer being linked with Agent Orange?  These questions are decidedly improper.  On the

25  other hand, if Dr. Treating Physician had previously opined in the records in connection with the
treatment that he believed the cause of the ailment was linked to Agent Orange, he could

26  certainly be asked why he wrote that.

for exceeding the topics described in the notices.  Neither of these two areas have been briefed to the undersigned for resolution.[7]  Although, in <u>Detoy</u> at 365, there was a bare, general reference to one outside-the-designated-area for testimony related to hypotheticals, and an instruction not to answer, the court did not in any way detail the questions asked, nor did it opine on the propriety of asking the questions in the first place (whatever they were).  Indeed, the explicated areas of testimony at issue in <u>Detoy</u> were precisely the type of fact questions which would be appropriately asked of a Rule 30(b)(6) deponent.

The undersigned correctly determined here that the questions at bar were inappropriate retained expert type questions.  No follow-up deposition will be ordered to ask the inappropriate questions.

*Conclusion*

The undersigned's rulings in the summary order are explained and confirmed.

Dated: December 15, 2009                    /s/ Gregory G. Hollows

_____
U.S. MAGISTRATE JUDGE

dagdagan.memo

---

[7] It may well be however, that counsel who seek free expert, Rule 26 type opinions from an adversary's non-designated employees for use in the litigation are engaging in actions which would warrant the termination of a deposition and the seeking of a protective order.