1

2

3                    IN THE UNITED STATES DISTRICT COURT

4                  FOR THE EASTERN DISTRICT OF CALIFORNIA

5

6    MACARIO BELEN DAGDAGAN,          )
                                      )
7              Plaintiff,             )      2:08-CV-00922-GEB-GGH
                                      )
8         v.                          )      ORDER GRANTING AND DENYING IN
                                      )      PART PLAINTIFF'S MOTION FOR
9    CITY OF VALLEJO, VALLEJO OFFICER )      PARTIAL SUMMARY JUDGMENT AND
     J. WENTZ, VALLEJO OFFICER JOHN   )      DENYING DEFENDANTS' MOTIONS
10   BOYD, VALLEJO OFFICER SGT. J.    )
     MILLER and Does 1-30, inclusive, )
11                                    )
               Defendants.            )
12   _____)

13        On September 2, 2009, Plaintiff Macario Dagdagan filed a motion

14   for partial summary judgment on certain of his Fourth Amendment claims

15   alleged under 42 U.S.C. section 1983 and his state claims alleged

16   under California Civil Code section 52.1.  Specifically, Plaintiff

17   seeks partial summary judgment on his claims that Vallejo Police

18   Officers Wentz and Boyd (collectively, "Defendants") violated his

19   Fourth Amendment rights by "entering [his] home without a warrant" and

20   "arresting [him] without probable cause."  (Not. of Mot. for Partial

21   Summ. J. 1.)  Plaintiff contends that liability under the Fourth

22   Amendment gives rise to liability under California Civil Code section

23   52.1. (Id.)  Plaintiff argues summary judgment is warranted because

24   the undisputed facts demonstrate Defendants violated his Fourth

25   Amendment rights when, without a warrant, they entered his apartment,

26   questioned him, and then arrested him.[1]  Defendants oppose Plaintiff's

27   _____

28        [1]  Plaintiff's briefs indicate that the portion of his motion
                                                          (continued...)

                                       1

motion, and seek to continue or dismiss it under Federal Rule of Civil
Procedure 56(f).  Further, each Defendant filed a cross motion for
summary judgment, arguing the defense of qualified immunity precludes
liability for Plaintiff's claims under the Fourth Amendment.  The
motions were heard on October 13, 2009.  For the reasons stated below,
Plaintiff's motion for partial summary judgment is GRANTED and DENIED
in part and Defendants' motions are DENIED.

### I.  LEGAL STANDARDS

Under Rule Federal Rule of Civil Procedure 56(c), the party
moving for summary judgment bears the initial burden of demonstrating
the absence of a genuine issue of material fact for trial.  Celotex
Corp. v. Catrett, 477 U.S., 317, 323 (1986).  If the moving party
satisfies this burden, "the non-moving party must set forth, by
affidavit or as otherwise provided in Rule 56, specific facts showing
that there is a genuine issue for trial."  T.W. Elec. Serv., Inc. v.
Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
1987)(quotations and citation omitted)(emphasis omitted).  When
deciding a summary judgment motion, all reasonable inferences that can
be drawn from the evidence "must be drawn in favor of the non-moving
party."  Bryan v. McPherson, --- F.3d ----, 2009 WL 5064477, at *2
(9th Cir. 2009).

Further, the defense of qualified immunity requires a two-step
analysis:

> First, the court determines whether the facts show
> the officer's conduct violated a constitutional
> right.  If the alleged conduct did not violate a
> constitutional right, then the defendants are

---

[1](...continued)
challenging Defendants' questioning of him after their entry need only
be decided if Defendants' warrantless entry is found to be justified.

1   entitled to immunity and the claim must be
    dismissed. However, if the alleged conduct did
2   violate such a right, then the court must determine
    whether the right was clearly established at the
3   time of the alleged unlawful action.  A right is
    clearly established if a reasonable official would
4   understand that what he is doing violates that
    right.  If the right is not clearly established,
5   then the officer is entitled to qualified immunity.
    While the order in which these questions are
6   addressed is left to the court's sound discretion,
    it is often beneficial to perform the analysis in
7   the sequence outlined above. Of course, where a
    claim of qualified immunity is to be denied, both
8   questions must be answered.

9   <u>Hopkins v. Bonvicino</u>, 573 F.3d 752, 762 (9th Cir. 2009)(quotations

10  and citation omitted).

11  **II.   DEFENDANTS' MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(f)**

12       Defendants seek a continuance or dismissal of Plaintiff's motion

13  under Federal Rule of Civil Procedure 56(f)("Rule 56(f)") premised on

14  their inability to depose two individuals, Gina Kearney and Paul

15  Turner.  (Opp'n. 7:4-17.)  Defendants have not successfully served

16  Kearney for a deposition; and they subpoenaed Turner but he failed to

17  appear.  (Lairamore Decl. ¶¶ 2-4; Whitefleet Decl. ¶¶ 8-9.)

18  Defendants expect Kearney to testify about her 911 emergency telephone

19  call in which she reported that Plaintiff assaulted her, the injuries

20  she suffered as a result of this reported assault, and the nature of

21  her relationship with Plaintiff.  Defendants spoke with Kearney when

22  they responded to her 911 call, after which Defendants attempted to

23  speak with Plaintiff, and ultimately entered Plaintiff's apartment

24  without a warrant.  Defendants expect Turner to provide evidence of

25  what Defendants observed before they entered Plaintiff's apartment.

26  (Whitefleet Decl. ¶¶ 10, 11.)  Plaintiff opposes the motion, arguing

27  Defendants have not demonstrated the testimony of either Kearney or

28

3

Turner is material to the issues in Plaintiff's motion.   (Reply 19:10-15.)

To prevail on their Rule 56(f) motion, Defendants must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." <u>State of Cal. on Behalf of California Dept. Of Toxic Substances Control v. Campbell</u>, 138 F.3d 772, 779 (9th Cir. 1986).  Defendants, however, have not demonstrated that the additional discovery they seek is "essential to resist" Plaintiff's motion.  <u>See id.</u>  Plaintiff's motion addresses whether Defendants were authorized under law to enter his apartment without a warrant.  The summary judgment evidentiary record indicates that the testimony Defendants seek is either cumulative of evidence already in the record or irrelevant to the motion.  Therefore, Defendants' Rule 56(f) motion is denied.

### III.   STATEMENT OF FACTS

The parties dispute the facts concerning Defendants' entry into Plaintiff's apartment and what transpired therein.  However, Plaintiff adopts Defendants' version of the facts for the purposes of his motion for partial summary judgment, only disputing Defendants' characterization of the weapon Plaintiff allegedly used in the reported assault as well as several inferences Defendants seek to have drawn from that evidence.  Defendants move to have certain declarations and exhibits attached to Plaintiff's motion stricken from the record.  However, this portion of Defendants' motion is denied as moot because Plaintiff agrees that Defendants' version of the facts in the summary judgment record are to be used when deciding Plaintiff's motion.

The summary judgment evidentiary record reveals that on June 2, 2007, at approximately 10:51 p.m., Gina Kearney placed a 911 emergency telephone call to the police, reporting that twenty-five minutes earlier, Plaintiff threatened to kill her with a knife at Plaintiff's apartment. (Pl.'s Opp'n. to Defs.' Statement of Additional Undisputed Material Facts ("SAUF") ¶ 3; Defs.' Opp'n. to Pl.'s Separate Statement of Undisputed Material Facts ("SUF") ¶ 1; Powell Decl. ¶ 4.)  In response to Kearney's 911 call, Defendants were dispatched to Kearney's residence at 1020 Santa Clara Street in Vallejo, California at approximately 11:19 p.m.  (Pl.'s Opp'n. to Defs.' SAUF ¶ 3; Powell Decl. ¶ 5.)

When Defendants arrived at Kearney's residence, Kearney told Defendant Boyd that Plaintiff assaulted her earlier in the day when she went to his apartment to retrieve a car she had loaned him. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 2-4.)  Kearney also stated Plaintiff had been drinking.  (Pl.'s Opp'n. to Defs.' SAUF ¶ 4.)  When reporting the assault to Defendants, Kearney appeared upset, tearful, her hands were shaking, and she complained that the back of her head hurt.  (Id. ¶ 8; Defs.' Opp'n. to Pl.'s SUF ¶ 10.)  Defendants, however, did not observe any signs of physical injury.  (Defs.' Opp'n. to Pl.'s SUF ¶ 10.)

Kearney further reported that when she was at Plaintiff's apartment, she and Plaintiff had an argument, in the course of which, Plaintiff "grabbed the back of her head and threatened to kill her while he held a butcher knife."[2]  (Defs.' Opp'n. to Pl.'s SUF ¶¶ 3-4.)

---

[2] Defendants argue Plaintiff assaulted Kearney with a meat cleaver instead of a butcher knife.  (Defs.' Opp'n. to Pl.'s SUF ¶ 4.)  However, evidence has not been presented supporting this argument.

Kearney said she then kneed Plaintiff in the groin, got a hold of the knife and called the name of the manager of the apartment building, Beverly Good. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 5-6.)  Good intervened, and the knife was removed from Plaintiff's apartment. (Defs.' Opp'n. to Pl.'s SUF ¶ 9; Pl.'s Opp'n. to Defs.' SAUF ¶ 7; Boyd Depo. 37:9-14, 38:24-25.)

After speaking with Kearney, Defendants left her home and went to Plaintiff's residence at 421 Louisiana Street in Vallejo, California, to speak with Plaintiff and hear his version of what had transpired. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 11-12.)  When Defendants arrived at Plaintiff's apartment, they observed that the door to the apartment was open. (Id. ¶ 19.)  Defendants also saw that a light was on in the apartment, and rice was scattered on the kitchen floor. (Id. ¶ 20.) Specifically, Boyd testified he could see from the doorway of Plaintiff's apartment "rice all over the linoleum [kitchen] floor." (Boyd Depo. 64:9-10.)  Boyd also testified, that from the doorway, he could see only the corner of the stove but could hear "gas or some type of noise." (Boyd Depo. 63:7-64:4.)  Defendants' counsel stated at the hearing on the motions, that from the landing outside of Plaintiff's apartment, the Defendants could not tell if there was anything cooking on top of the stove.

While outside Plaintiff's apartment, Defendants announced their presence by calling out "Vallejo Police." (Pl.'s Opp'n. to Defs.' SAUF ¶ 24.)  There was no response. (Id. ¶ 25.)  After a few seconds, Defendants entered Plaintiff's apartment. (Id.)  The doorway to Plaintiff's apartment opens into a small kitchen.  After their entry, Boyd turned the stove burner off. (Pl.'s Opp'n. to Defs.' SAUF ¶ 11; Boyd Depo. 70:12.)  Defendants moved from the kitchen into a bedroom,

where they found Plaintiff lying in bed under blankets, and apparently asleep. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 43-44, 47.)  Defendants saw empty beer bottles on the night stand next to Plaintiff's bed. (Id. ¶ 52.)  Defendants again announced their presence but Plaintiff did not respond. (Id. ¶ 45.)  Boyd then grabbed Plaintiff's leg and tugged on it. (Id. ¶ 46.)  Plaintiff responded by saying something to the effect of "leave me alone" or "let me go to sleep." (Id. ¶ 47.)

Boyd asked Plaintiff to identify himself, and Plaintiff provided his name. (Id. ¶ 48.)  Boyd then told Plaintiff that Kearney had reported that he had assaulted her with a butcher knife. (Id. ¶ 49; Boyd Depo. 92:3-4.)  Plaintiff responded by telling Defendants "to get the fuck out of his house" and rolled over as if to go back to sleep. (Defs.' Opp'n. to Pl.'s SUF ¶ 50.; Pl.'s Opp'n. to Defs.' SAUF ¶ 17.) Defendants then grabbed and lifted the blanket off Plaintiff "for officer safety." (Defs.' Opp'n. to Pl.'s SUF ¶ 51.)  Boyd continued to ask Plaintiff to discuss the reported assault and provide "his side of the story." (Id. ¶ 53.)  Plaintiff refused to cooperate or answer those questions. (Pl.'s Opp'n. to Defs.' SAUF ¶ 18.)  Plaintiff was "verbally aggressive and agitated." (Id. ¶ 12; Boyd Depo. 96:6-22; Wentz Depo. 58:13-18.)

After several minutes of questioning, Plaintiff sat up in bed, with his hands clenched in a fist position by his waist. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 57-58.)  However, Plaintiff never struck at or swung at either Defendant. (Id. ¶ 58.)  Wentz then showed his taser and warned Plaintiff multiple times that he would be tased if he did not cooperate. (Pl.'s Opp'n. to Defs.' SAUF ¶ 20.)  Plaintiff still refused to comply with Defendants' requests, and Boyd told Plaintiff he was under arrest for "delaying or obstructing [his] investigation."

(Defs.' Opp'n. to Pl.'s SUF ¶ 60; Boyd Depo. 98:5-11.)  Specifically, Boyd testified, "we were trying to get a statement from him, and after he was, you know, telling me and telling Officer Wentz several times to fuck off and this and that, at that point I told him he was under arrest for delaying or obstructing my investigation." (Boyd Depo. 98:5-11.)

Then, one of the Defendants told Plaintiff to lay on his stomach and put his hands behind him or he would be tased.  (Pl.'s Opp'n. to Defs.' SAUF ¶ 21; Defs.' Opp'n. to Pl.'s SUF ¶ 62.)  Plaintiff refused, and again told Defendants to "fuck off." (Pl.'s Opp'n. to Defs.' SAUF ¶ 21.)  Defendant Wentz then fired his taser which sent two probes towards Plaintiff. (Defs.' Opp'n. to Pl.'s SUF ¶ 65.) Once tased, Plaintiff sat straight up as if the taser had no effect; and, he continued to refuse to place his hands behind his back. (Pl.'s Opp'n. to Defs.' SAUF ¶ 22.)  Plaintiff also resumed swearing. (Defs.' Opp'n. to Pl.'s SUF ¶ 69.)  Wentz then tased Plaintiff again. (Id. ¶ 71.)  Thereafter, Boyd was able to lie Plaintiff's body flat on the mattress and handcuff him. (Id.)  Subsequently, medics arrived who transported Plaintiff to the hospital where he received medical care. (Id. ¶¶ 83-85.)

All criminal charges against Plaintiff were voluntarily dropped by the District Attorney. (Id. ¶ 86.)

## IV.  DISCUSSION

### A.  Plaintiff's Fourth Amendment Claims

Plaintiff argues he is entitled to partial summary judgment on his Fourth Amendment claims since Defendants impermissibly entered his

apartment without a warrant, questioned him regarding a reported assault, and subsequently arrested him.  Defendants' argue their actions were justified under the Fourth Amendment, and alternatively, they are entitled to qualified immunity.

**1.   The Warrantless Entry**

Plaintiff argues Defendants' warrantless entry into his apartment violated his rights under the Fourth Amendment.  As stated by the Ninth Circuit:

> The Fourth Amendment provides: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'  Searches and seizures inside a home without a warrant are presumptively unreasonable.  The presumption, however, is not irrebuttable.  There are two general exceptions to the warrant requirement for home searches: exigency and emergency.  These exceptions are narrow and their boundaries are rigorously guarded to prevent any expansion that would unduly interfere with the sanctity of the home.  In general, the difference between the two exceptions is this: The "emergency" exception stems from the police officers' community caretaking function and allows them to respond to emergency situations that threaten life or limb; this exception does not derive from police officers' function as criminal investigators.  By contrast, the "exigency" exception does derive from the police officers' investigatory function; it allows them to enter a home without a warrant if they have both probable cause to believe that a crime has been or is being committed and a reasonable belief that their entry is necessary to prevent the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.

Hopkins, 573 F.3d at 763 (quotations, brackets and citations omitted).

Since it is undisputed that Defendants entered Plaintiff's apartment without a warrant, unless either the emergency or exigency exception applies, Defendants' warrantless entry violated Plaintiff's

rights under the Fourth Amendment.  Defendants argue their entry was justified under both exceptions.

### a.   The Emergency Exception

Defendants contend they were authorized to enter Plaintiff's apartment under the emergency exception since the following facts gave them "probable cause to believe a burglary had occurred:" the door was open late at night, rice was on the kitchen floor, a light and the stove were on, and there was no response to their announcement of police presence.  (Opp'n. to Mot. for Summ. J. 10:18-19.)  Defendants alternatively argue their observations gave them reason to believe that "there could be injured parties" inside Plaintiff's apartment. (Id. 10:25.)

However, the exigency exception, not the emergency exception, is applicable when law enforcement officers conduct a warrantless search of a home to investigate a burglary.  See U.S. v. Erickson, 991 F.2d 529, 533 (9th Cir. 1993)(stating that a burglary investigation could not justify warrantless entry into home under the emergency exception; however, exigent circumstances could justify a warrantless entry into a residence if facts known to the officers suggested that a burglary was in progress and supported probable cause to enter to learn what was happening).

Under the emergency exception, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." Bringham City v. Stuart, 547 U.S. 398, 403 (2006).  The "'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises.  It requires only an objectively reasonable basis for

10

believing that a person within the house is in need of immediate aid."
Michigan v. Fisher, 130 S. Ct. 546, 548 (2009)(quotations and
citations omitted).  That is, at the time of their warrantless entry,
the police officers must have had "an objectively reasonable basis for
believing that medical assistance was needed, or persons were in
danger."  Id. at 549 (quotations and citation omitted); see also U.S.
v. Snipe, 515 F.3d 947, 952 (9th Cir. 2008)(articulating Ninth
Circuit's two-pronged test for application of emergency exception; the
first prong asking whether, "considering the totality of the
circumstances, law enforcement had an objectively reasonable basis for
concluding that there was an immediate need to protect others or
themselves from serious harm.").

Defendants have not shown their entry was justified under the
emergency exception since the record is devoid of facts indicating
anyone was injured in the Plaintiff's apartment.  Other than Kearney's
statement that she had kneed Plaintiff in the groin, Defendants had no
reason to believe Plaintiff was injured.  Application of this
exception requires more than mere speculation of injury.  See Hopkins,
573 F.3d at 764 (holding that warrantless entry to check for injuries
when responding to report of minor hit and run car accident was not
justified under emergency exception as there was no indication that
the accident had caused any injuries).  Therefore, in light of the
totality of circumstances, it was not objectively reasonable for
Defendants to believe "that medical assistance was needed or persons
were in danger."  Fisher, 130 S. Ct. at 547.  The emergency exception
does not justify Defendants' warrantless entry into Plaintiff's
apartment.

//

**b.    The Exigency Exception**

For the exigency exception to apply, the Defendants "must satisfy two requirements: first, [they] . . . must prove that [they] had probable cause to search [Plaintiff's apartment]; and second, . . . [they] must [also demonstrate] that exigent circumstances justified the warrantless intrusion." Hopkins, 573 F.3d at 768.  Probable cause for a search requires that there be "known facts and circumstances . . . sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Hopkins, 573 F.3d at 767 (quotations and citation omitted).  Exigent circumstances exist when "there is a compelling reason for not obtaining a warrant – for example, [when there is] a need to protect an officer or the public from danger, a need to avoid the imminent destruction of evidence, when entry in hot pursuit is necessary to prevent a criminal suspect's escape or [there is] a need to respond to fire or other emergencies." Fisher v. City of San Jose, 509 F.3d 952, 960 (9th Cir. 2007)(quotations and citation omitted).  Therefore, when law enforcement officials rely on the exigency exception, they must demonstrate that they "attempt[ed], in good faith, to secure a warrant or to present evidence explaining why a telephone warrant was unavailable or impractical." Id. at 961.

Defendants make two arguments in support of their contention that the exigency exception justified their warrantless entry.  First, Defendants argue their entry was justified because they believed a burglarly had either occurred or was in progress at Plaintiff's apartment.  (Opp'n. to Mot. for Summ. J. 13-14.)  Defendants contend the following observations made upon their arrival at Plaintiff's apartment gave them probable cause to believe Plaintiff's apartment

12

had been burglarized or that a burglarly was in progress: the door was open late at night, a light was on, the stove was on, rice was on the kitchen floor, and there was no response to the announcement of police presence.  (Opp'n. 12:17-24.)  "To determine if the officers had probable cause to enter [Plaintiff's apartment], we examine the totality of the circumstances known to the officers at the time they entered.  Probable cause requires only a fair probability or substantial chance of criminal activity, not an actual showing that such activity occurred."  Murdock v. Stout, 54 F.3d 1437, 1441 (9th Cir. 1995), abrogated on other grounds by, LaLonde v. County of Riverside, 204 F.3d 947, 957 (9th Cir. 2000).

Defendants argue the Ninth Circuit's decision in Murdock v. Stout supports their position that they were authorized to enter Plaintiff's apartment without a warrant to investigate a potential burglary.  54 F.3d at 1442.  Murdock, however, is distinguishable since in that case the police were dispatched to the plaintiff's house to investigate a report of suspicious activity suggesting a potential burglary.  Id. at 1441.  Upon their arrival, the officers discovered an open door at the rear of the house.  Id.  Based upon these facts alone, the Ninth Circuit concluded there was not probable cause to support the officers' entry.  Id.  However, the officers in Murdock also "observed several indications that a resident was or should have been at the residence.  The lights were on and a television was on . . . .  The officers [then] attempted to make contact with the resident . . . but received no answer . . . ."  Id. at 1442.  The Ninth Circuit held that "[t]hese additional pieces of information, indicating that a resident should have been home, but was not responding, combined with the earlier report of suspicious activity and the presence of an open door

tip[ped] the scales to supply the officers with probable cause to
believe that some criminal activity had occurred or was occurring
 . . . ."  Id. at 1442.  Further, the Ninth Circuit explicitly noted
in Murdock "there was no indication . . . that the officers were using
their burglary investigation as a pretext for conducting a search for
evidence in Murdock's home."  Id. at 1442-43.

    Here, the situation is different.  Defendants were not
responding to a reported burglary; they went to Plaintiff's apartment
to speak with Plaintiff about a reported assault.  Defendants'
observations that Plaintiff's door was open at night, that a light and
the stove were on, that rice was on the floor, and that there was no
response to their announcement of their presence, did not give them
probable cause to believe a burglarly had occurred or was in progress.
Further, upon entry into Plaintiff's apartment, Defendants did not
look for additional evidence of a burglary; rather, they found
Plaintiff in bed and attempted to speak with him regarding the assault
Kearney had reported.  (Pl.'s Opp'n. to Defs.' SAUF ¶ 15.)
Defendants' after-the-fact argument that a potential burglary
justified their entry appears to be a pre-textual basis for entering
Plaintiff's apartment to investigate Kearney's assault allegations.

    Moreover, even "[i]f a burglary had occurred in the recent past,
there was no need for the police to enter [Plaintiff's apartment].
The only possible basis for finding exigent circumstances is if the
facts support a finding that the police had a legitimate reason to
believe that a burglary was in progress."  Guam v. Manibusan, Crim.
No. 89-000136A, 1990 WL 320756, at *4 (D. Guam Feb. 16, 1990).
Defendants "bear[] the burden of showing the existence of exigent
circumstances by particularized evidence, and this burden is not

satisfied by mere speculation" that a burglary was in progress.
Baily v. Newland, 263 F.3d 1022, 1033 (9th Cir. 2001)(citations and
quotations omitted).

Defendants alternatively argue, given Kearney's report and the
condition of Plaintiff's apartment upon their arrival, there was
probable cause to believe that the crime of either assault or battery
had been committed there earlier and "exigency existed to immediately
investigate . . . ." (Opp'n. 14:2.)  Defendants, however, have not
demonstrated that their entry and search was supported by any exigency
making it reasonable for them to enter Plaintiff's apartment without a
warrant.  "[T]he presence of exigent circumstances necessarily implies
that there is insufficient time to obtain a warrant; therefore, the
[Defendants] must show that a warrant could not have been obtained in
time."  Baily, 263 F.3d at 1033 (citations and quotations omitted).
Defendants simply posit that "exigency existed to avoid the improper
frustration of legitimate law enforcement efforts." (Opp'n. to Mot.
for Summ. J. 13:27-28.)  Defendants made no attempt to obtain a
warrant, and have not explained why a telephone warrant was
unavailable or impractical.  Since Defendants have not sustained their
burden of showing an exigency excused the warrant requirement, the
exigency exception does not justify their entry into Plaintiff's
apartment to investigate the reported assault.  Therefore, the
exigency exception does not sanction Defendants' actions.

**2.   The Warrantless Arrest**

Plaintiff also argues Defendants violated his Fourth Amendment
rights by arresting him in his home without a warrant.  Defendants
counter the arrest was justified on two grounds.  First, they contend
they had probable cause to arrest Plaintiff for the assault Kearney

reported.  Defendants argue "exigency is established by Plaintiff's

intoxication, the open door, the violent nature of the crime of an

assault with a [butcher knife], and the clear potential of Plaintiff

presenting a danger to the community at large, but more specifically

of potential further assault of Kearney . . . ."  (Opp'n. 20:16-19.)

Defendants also assert they had probable cause to arrest Plaintiff

under California Penal Code Section 148 for delaying or obstructing a

police officer.[3]  Defendants contend that their observations of

"Plaintiff with close[d] fists" provided exigent circumstances to

effectuate the arrest.  (Opp'n. 21:1.)

   "[T]he warrantless arrest of a person is a species of seizure"

that under the Fourth Amendment, must be reasonable to be

constitutional.  Payton v New York, 445 U.S. 573, (1980).  "The Fourth

Amendment protects against warrantless arrest inside a person's home

in the same fashion that it protects against warrantless searches of

the home, which is to say that police officers may not execute a

warrantless arrest in a home unless they have both probable cause and

exigent circumstances."  Hopkins, 573 F.3d at 773.  Since Defendants

arrested Plaintiff in his home without a warrant, the arrest is

constitutional only if Defendants can demonstrate both probable cause

and exigent circumstances.

   Defendants' first argument - that they properly arrested

Plaintiff for the reported assault - fails to satisfy the requirements

of the Fourth Amendment.  Defendants' arrest of Plaintiff on this

---

   [3]  California Penal Code Section 148(a)(1) provides that "[e]very
person who willfully resists, delays or obstructs any public officer .
. . . in the discharge or attempt to discharge any duty of his or her
office or employment . . . shall be punished by a fine not exceeding one
thousand dollars ($1,000), or by imprisonment in a county jail not to
exceed one year, or by both that fine and imprisonment."

ground was unreasonable for the same reasons that Defendants' entry was impermissible.  See Hopkins, 573 F.3d at 773.  "[I]f the entry was illegal, the arrest was as well."  Gallagher v. City of Winlock Washington, 287 Fed. Appx. 568, 574 (9th Cir. 2008).

Defendants' second argument - that Plaintiff was permissibly arrested for a violation of California Penal Code Section 148 ("Section 148") - is also unpersuasive.  The elements of a violation of Section 148(a)(1) are: "(1) the [individual] willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the [individual] knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties."  Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005).  However, "[i]n California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer."  Id.  Since Defendants unlawfully entered Plaintiff's apartment, Plaintiff's refusal to answer questions relating to the assault or to cooperate with the police officer's investigation cannot be the basis of a constitutional arrest under Section 148.  Therefore, Defendants' arrest of Plaintiff under Section 148 violated Plaintiff's Fourth Amendment right against unreasonable seizure.

### B.  Defendants' Motion for Qualified Immunity

Each Defendant argues even if his actions violated Plaintiff's Fourth Amendment rights, the defense of qualified immunity shields him from liability.[4]  The qualified immunity analysis hinges upon whether

---

[4]  Plaintiff has not agreed to treat Defendants' version of events
(continued...)

1  Plaintiff's Fourth Amendment rights were clearly established in 2007
2  when Defendants engaged in the unconstitutional conduct.  See Hopkins,
3  573 F.3d at 770-71.  "To be clearly established, the contours of the
4  [constitutional] right must be sufficiently clear [so] that a
5  reasonable official would understand that what he is doing violates
6  [the constitutional right at issue].  The dispositive inquiry is
7  whether it would be clear to a reasonable officer that his conduct was
8  unlawful in the situation he confronted.  If the officer's mistake as
9  to what the law requires is reasonable, the officer is entitled to the
10 [qualified] immunity defense."  Ramierz v. City of Buena Park, 560
11 F.3d 1012, 1020 (9th Cir. 2009)(quotations and citations omitted).

12 **1.  Application of Qualified Immunity to Defendants' Warrantless Entry**

13      The standard articulated in United States v. Cervantes
14 in 2000, clearly established that "[t]he police must have reasonable
15 grounds to believe that there is an emergency at hand and an immediate
16 need for their assistance" to be justified in making a warrantless
17 entry into a residence.  United States v. Cervantes, 219 F.3d 882, 888
18 (9th Cir. 2000), overruled by, U.S. v. Snipe, 515 F.3d 947 (9th Cir.
19 2008)(articulating applicable standard for emergency exception); see
20 also Hopkins, 573 F.3d at 771.  The "qualified immunity analysis
21 [however,]. . . presents a somewhat different question than whether
22 there were reasonable grounds to believe that there was an emergency
23 at hand; [instead,] in determining whether the officers' conduct
24 violated clearly established law, [the court] must ask whether in

25

26      [4](...continued)
   as true for the purpose of decision on each Defendant's qualified
27 immunity motion.  However, since it is determined that each Defendant
   fails to prevail on his qualified immunity defense using Defendants'
28 version of the facts, it is unnecessary to discuss the parties' factual
   disputes.

200[7,] a *'reasonable officer' would have known* that he lacked
reasonable grounds to believe that there was an emergency at hand."
Hopkins, 573 F.3d at 771 (quotations and citation omitted)(emphasis in
original).

     "[A] reasonable officer would indeed have known that the
emergency exception to the Fourth Amendment would not encompass a
warrantless entry" on the facts of this case.  Hopkins, 573 F.3d at
771.  Based upon Kearney's report and the condition of Plaintiff's
apartment upon Defendants arrival, a reasonable officer would have
concluded that he lacked reasonable grounds for believing there was an
emergency necessitating an immediate need of assistance.  When the
evidence the officers have provided does not contain adequate
justification for their entry, it can be concluded that "it would have
been clear to a reasonable officer that such [an entry] was unlawful."
Id. at 771 (quotations and citation omitted).  Therefore, Defendants
qualified immunity motion under the emergency exception is denied.

     The contours of the exigency exception were also well-defined in
2007.  At that time, it was clearly established that the exigency
exception required the presence of both probable cause and exigent
circumstances.  See U.S. v. Martinez, 406 F.3d 1160, 1164 (9th Cir.
2005); U.S. v. Lai, 944 F.2d 1434, 1441 (9th Cir. 1991)(abrogated on
other grounds).  Further, "the existence of probable cause to arrest
and search does not eliminate the need for a search warrant absent
exigent circumstances."  Bailey v. Newland, 263 F.3d 1022, 1033 (9th
Cir. 2001).

     Since a reasonable officer should have known that "exigent
circumstances necessarily imply insufficient time to obtain a
warrant," and that mere investigation of a crime does not itself

create an exigency justifying a warrantless entry into a residence, Defendants qualified immunity argument under this exception is unavailing. <u>U.S. v. Lindsey</u>, 877 F.2d 777, 781 (9th Cir. 1989); <u>see also</u> <u>Groh v. Ramierz</u>, 540 U.S. 551, 558 (2004)(noting that "a warrantless entry to search for weapons or contraband even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within" is unlawful absent exigent circumstances).  Further, a reasonable officer would have known that the condition of Plaintiff's apartment upon Defendants' arrival, did not "[give] rise to exigent circumstances justifying [a] warrantless entry . . . ." <u>Id.</u>  Therefore, Defendants' motion is also denied on this ground.

**2.  Application of Qualified Immunity to Defendants' Warrantless Arrest**

In 2007, it was well-established that an arrest constitutes a seizure for purposes of the Fourth Amendment.  <u>See</u> <u>Hopkins</u>, 573 F.3d at 774.  "There can be no doubt that the law in this respect was clearly established prior to 200[7] and thus should have been known by a reasonable officer." <u>Id.</u>  Moreover, a reasonable officer would have known that a warrantless arrest within Plaintiff's home required the presence of both probable cause and exigent circumstances.  <u>See</u> <u>Kirk v. Louisiana</u>, 536 U.S. 635, 638 (2002)(holding that both exigent circumstances and probable cause are required to justify a warrantless arrest inside the home).

In light of Defendants' unlawful entry, no reasonable officer would have believed that Plaintiff could have been arrested for violating California Penal Code Section 148(a).  Further, no reasonable officer would have believed exigent circumstances existed

to arrest Plaintiff for the reported assault.  Therefore, Defendants'
motion is also denied on this ground.

### C.  Plaintiff's Claims Under California Civil Code Section 52.1

Plaintiff also seeks partial summary judgment on his claims under
California Civil Code section 52.1, in which he alleges Defendants'
"actions constituted interference with [P]laintiff's rights under the
Fourth Amendment."  (Not. of Mot. for Partial Summ. J. 1.)  Section
52.1(b) provides that "[a]ny individual whose exercise or enjoyment of
rights secured by the Constitution or laws of the United States . . .
has been interfered with . . . may institute and prosecute . . . a
civil action for damages . . . and other appropriate equitable relief
. . . ."  Cal. Civ. Code § 52.1(b).  Plaintiff, however, fails to
address his claims under section 52.1 in his motion and provides no
authority supporting his conclusory argument under Section 52.1.
Therefore, this portion of Plaintiff's motion is denied.

### V.  CONCLUSION

For the stated reasons, Plaintiff's motion for partial summary
judgment on his Fourth Amendment claims based on Defendants'
warrantless entry into his apartment and his subsequent arrest is
GRANTED and Plaintiff's motion under California Civil Code section
52.1 is DENIED.  Defendants' motions are DENIED.

Dated:  January 6, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge