IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
MARCARIO BELEN DAGDAGAN,         )
                                 )    2:08-cv-00922-GEB-KJN
            Plaintiff,           )
                                 )
     v.                          )    ORDER
                                 )
CITY OF VALLEJO; VALLEJO OFFICER )
JOHN BOYD (ID#589); VALLEJO      )
OFFICER J. WENTZ (ID#524);       )
VALLEJO OFFICER JAMES MELVILLE   )
(ID#559),                        )
                                 )
            Defendants.          )
_____)
```

Plaintiff seeks partial summary judgment on his Fourth Amendment unlawful search claim ("Fourth Amendment claim") alleged against Defendant Melville, which is based on allegations that Melville prepared affidavits for an unlawful search warrant and conducted an unlawful search. Melville cross-moves for summary judgment on this claim.

Further, Defendants seek partial summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim ("substantive due process claim") alleged against Defendants Wentz and Boyd, arguing "there is no evidence of deliberate indifference to [Plaintiff's] medical needs." (Defs.' Mot. 2:21.) Plaintiff failed to respond to this portion of Defendants' motion in his opposition brief,

1

and stated at the October 24, 2011 hearing on the motions that he abandons this claim. Therefore, Plaintiff's substantive due process claim against Wentz and Boyd is dismissed.

Defendants also seek summary judgment on Plaintiff's Monell claims against the City of Vallejo (the "City"), arguing "there is no evidence of unconstitutional policies, nor that [the City] engaged in a custom or practice of condoning or ratifying police use of unlawful entries/arrests/excessive force against citizens to the degree of deliberate indifference required to impute liability for constitutional violations." Id. 2:22-26. Plaintiff opposes the City's motion on his Monell claims, arguing he can show that "policymakers . . . ratified the illegal conduct . . . [and] plaintiff's injuries were due to [a] municipal custom and practice of inadequate training and supervision." (Pl.'s Opp'n 2:7-10.) Alternatively, Plaintiff requests a continuance in order to obtain an expert report, which he argues "will provide further evidence of the City's deliberate indifference to the illegal conduct of its employees." Id. 16:25-28.

## I.   PLAINTIFF'S RULE 56(d) CONTINUANCE REQUEST

Plaintiff's continuance request is governed by Federal Rule of Civil Procedure ("Rule") 56(d), which prescribes: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Therefore, to obtain a continuance under Rule 56(d), Plaintiff "must show (1) that [he has] set forth in affidavit form the specific facts that [he] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts

2

are 'essential' to resist the summary judgment motion." State of Cal., on Behalf of Cal. Dept. of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998). Moreover, Plaintiff "must make clear what information is sought and how it would preclude summary judgment." Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998). Here, Plaintiff has neither identified the specific facts that he hopes to elicit from the referenced expert report, nor made clear how such information would preclude summary judgment. Therefore, Plaintiff's continuance motion under Rule 56(d) is denied.

## II. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When deciding cross-motions for summary judgment, each motion is evaluated on its own merits, "taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 592 (6th Cir. 2001); Bryan v. McPherson, 608 F.3d 614, 619 (9th Cir. 2010) (stating all reasonable inferences that can be drawn from the evidence "must be drawn in favor of the non-moving party").

When the defendant is the moving party and is seeking summary judgment on one or more of a plaintiff's claims,

>[the defendant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted). If the moving party satisfies its initial burden, "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation and internal quotation marks omitted). The "non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (citation and internal quotation marks omitted).

Further, Local Rule 260(b) requires:

>Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed

4

facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

> Because a district court has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment, . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (citation and internal quotation marks omitted).

### III. UNCONTROVERTED FACTS

On June 2, 2007, "Vallejo Police Officers Wentz and Boyd were dispatched to respond to [a] call for service" placed by Gina Kearney, who had reported that Plaintiff assaulted her. (Defs.' Statement of Undisputed Material Facts ("SUMF") ¶¶ 2-3.) Subsequently, Wentz and Boyd entered Plaintiff's residence, where they found Plaintiff "in the bedroom lying on a bed." (Pl.'s SUMF ¶ 1.) Wentz and Boyd engaged in a verbal exchange with Plaintiff, during which Plaintiff was placed under arrest and tased twice. Id. ¶¶ 2-7. "After handcuffing [P]laintiff, Officers Wentz and Boyd brought [P]laintiff to the living room of the apartment." Id. ¶ 8. When Sergeant Miller, a Vallejo Police Department supervisor, "arrived soon after the incident[, Plaintiff] was complaining that the officers had broken his neck." Id. ¶ 23.

"Several days after Vallejo police officers arrested Plaintiff Dagdagan in his apartment, Vallejo Police Detective Jim Melville obtained a Search Warrant . . . ." Id. ¶ 121. "Detective Melville decided to seek a search warrant because he believed he needed to collect the chair that was used in the alleged assault." Id. ¶ 122.

5

Melville "drafted a probable cause [affidavit (the 'Affidavit')] in support [of the search warrant] and obtained a search warrant for lawn chairs purportedly used between Kearney and [P]laintiff, as well as evidence of dominion and control over the premises." (Defs.' SUMF ¶ 34.) Melville attests in the Affidavit "that the alleged victim told the officers on the scene that Mr. Dagdagan 'resided at 421 Louisiana Street[,]'" "that 'The true address of Dagdagan is 423 Louisiana APT #B[,]'" and "that the apartment manager, Beverly Good, told him that 'Dagdagan's address is 423 Louisiana Apartment B' and that Dagdagan had 'been living in that apartment for approximately three weeks.'" (Pl.'s SUMF ¶¶ 127-29.) Melville testified that "it was a common practice . . . to establish residency of the apartment which I'm going to search." Id. ¶ 136.

"The Search Warrant, issued from Solano County Superior Court on June 7, 2009, authorized a search for a green plastic chair— . . . the alleged means of committing a felony." Id. ¶ 123. The warrant also authorized a search for the following personal papers:

> Any items tending to establish the identity of persons who have dominion and control of the location, premises, automobile, or items to be seized, including delivered mail, whether inside the location or in the mail box/s, bills, utility bills, telephone bills, miscellaneous addressed mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax statements, payroll check stubs[.]

Id. ¶ 124. "When Detective Melville executed the search warrant, he admitted he looked through the whole apartment looking for evidence of identification." Id. ¶ 139. "Detective Melville also looked for mail." Id. ¶ 141. "Detective Melville found Mr. Dagdagan's driver's license next to his bed mattress." Id. ¶ 140.

"Sgt. Miller reported the incident to the [Internal Affairs

Division ('IAD')]." (Defs.' SUMF ¶ 31.) "Two detectives from the criminal investigations unit were assigned to investigate the cause and origin of plaintiff's injury." (Pl.'s SUMF ¶ 73.) "The Department maintains an . . . IAD . . . which investigates complaints of improper conduct by its officers." Id. ¶ 43. "The IAD is supervised by a sergeant who reports to a lieutenant who commands the Professional Standards Division." Id. ¶ 44. "The lieutenant who commands the Professional Standards Division reports directly to the Chief of Police." Id. ¶ 45.

## IV. DISCUSSION

Each of Plaintiff's claims at issue in these motions is alleged under 42 U.S.C. § 1983. (First Amended Complaint ¶¶ 27-31.) "To state a claim for relief in an action brought under § 1983, [Plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States[.]" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). "In the Ninth Circuit, the burden of proof in § 1983 [claims] remains always with the plaintiff." Jordan v. Herrera, 224 Fed. Appx. 657, 657 (9th Cir. 2007); see also Pavao v. Pagay, 307 F.3d 915, 919 (9th Cir. 2002) ("In a civil case under [§ 1983], however, the plaintiff carries the ultimate burden of establishing each element of his or her claim.").

### A. Fourth Amendment Claims

Melville and Plaintiff cross-move for summary judgment on Plaintiff's Fourth Amendment unlawful search claims. Defendant argues, *inter alia*, "a search warrant was lawfully obtained." (Defs.' Mot. 2:20.) Plaintiff counters, arguing "the subject search warrant's authorization . . . is facially overbroad for two reasons: (1) the officers' investigation had already established that Dagdagan lived in the apartment that was the subject of the search . . . and (2) there was

7

no probable cause that 'dominion and control' of the premises was related to the alleged criminal activity being investigated." (Pl.'s Opp'n 20:22-27.) Melville rejoins, arguing "it is reasonable under the Fourth Amendment to conduct searches for [the] purpose of obtaining evidence that would aid in a conviction." (Defs.' Reply 3:15-16.)

"The Supreme Court has recognized that a search or seizure pursuant to an invalid warrant constitutes an invasion of the constitutional rights of the subject of that search at the time of the unreasonable governmental intrusion." Millender v. Cnty. of Los Angeles, 620 F.3d 1016, 1024 (9th Cir. 2010) (internal quotation marks and citations omitted). "Even when only a portion of a search warrant is invalid, the subject of the search suffers a constitutional violation." Id. "[T]he Fourth Amendment [requires] specificity, which has two aspects, particularity and breadth. . . . Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." Id. (internal quotation marks and citations omitted). "A search warrant that is not issued 'upon probable cause' is invalid. Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (internal quotation marks and citations omitted).

Plaintiff argues the search warrant was overbroad since "the officers' investigation had already established that Dagdagan lived in the apartment that was the subject of the search." (Pl.'s Opp'n 20:25.) In support of his argument, Plaintiff produces Melville's Affidavit and deposition testimony. In the Affidavit, Melville attests "that the alleged victim told the officers on the scene that Mr. Dagdagan 'resided at 421 Louisiana Street[,]'" "that 'The true address of Dagdagan is 423 Louisiana APT #B[,]'" and "that the apartment manager, Beverly Good,

told him that 'Dagdagan's address is 423 Louisiana Apartment B' and that Dagdagan had 'been living in that apartment for approximately three weeks.'" (Pl.'s SUMF ¶¶ 127-29.) Melville further attests in the Affidavit: "Officer Wentz and Officer Boyd went to the upstairs residence . . . [and] contacted [Plaintiff] in the back bedroom. . . . After the [second taser strike, Plaintiff] became more submissive and was taken into custody." (Boley Decl., Ex. N RULE 26083-084.) Melville also gave deposition testimony that "in [his] mind . . . there [was no] question about who lived there[.]" Id. Ex. K 102:11-13.

Further, Plaintiff argues the search warrant was overbroad since "there was no probable cause that 'dominion and control' of the premises was related to the alleged criminal activity being investigated." (Pl.'s Opp'n 20:26-27.) Specifically, Plaintiff argues:

> Melville's affidavit shows the police sought to seize a "green plastic chair" that was allegedly used in the assault. The only evidence regarding the green chair being used in the assault was [Melville] attesting that the apartment manager told him that she saw "Dagdagan and Kearney hitting each other with green plastic chairs." Given this eye-witness information about use of the chair in the alleged assault, whether or not [Plaintiff] had "dominion and control" of the premises where the assault allegedly occurred was superfluous to the criminal activity being investigated.

Id. 21:18-24 (internal citations omitted). In support of his argument, Plaintiff relies on Melville's Affidavit, in which he attests "[Good] said she saw Kearney hit Dagdagan in the head with the green plastic chair approximately four times." (Boley Decl., Ex. N RULE 26084.)

Melville replies, arguing:

> it is reasonable under the Fourth Amendment to conduct searches for [the] purpose of obtaining evidence that would aid in a conviction. Indeed, California Penal Code 1524(a)(4) authorizes that a search warrant may issue to search for "any item or constitute any evidence that tends to show a felony

9

has been committed, or tends to show that a particular person has committed a felony."

(Defs.' Reply 3:15-19 (internal citations omitted.)) Melville also argues he "understands Plaintiff lived there[, but this] is not the same as exercising dominion and control." (Defs.' Mot. 7:12-14.)

Even when drawing all reasonable inferences in favor of Plaintiff, there is no genuine issue of material fact for trial since "it is reasonable, within the terms of the Fourth Amendment, to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in . . . convicting [a suspect of a] crim[e.]" Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 306 (1967); cf. United States v. Alexander, 761 F.2d 1294, 1302 (9th Cir. 1985) ("[A] warrant that authorized a search for articles tending to establish the identity of the persons in control of the premises was sufficiently particular.") (internal quotation marks omitted).

Further, Plaintiff argues "Melville's search through [Plaintiff's] apartment for identifying documents is just the sort of exploratory search our Framers sought to prevent." (Pl.'s Opp'n 18:21-22.) However, "[i]t is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant." U.S. v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir. 1984). Here, it is uncontroverted that Melville "admitted that he looked through the whole apartment looking for evidence of identification[,]" "looked for mail[,]" and "found [Plaintiff's] driver's license next to his bed mattress." (Pl.'s SUMF ¶¶ 139-41.) Further, each of these items is described in the language of the search warrant:

> Any items tending to establish the identity of persons who have dominion and control of the location, premises, automobile, or items to be seized, including delivered mail, whether inside the location or in the mail box/s, bills, utility bills, telephone bills, miscellaneous addressed mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax statements, payroll check stubs[.]

(Boley Decl., Ex. N RULE 26079-080.) Since Melville searched only for items enumerated in the search warrant, the search was lawful. See Alexander, 761 F.2d at 1302 ("The search must be one directed in good faith toward the objects specified in the warrant . . . ."). Therefore, Defendants' motion for partial summary judgment on Plaintiff's Fourth Amendment claim against Melville is granted, and Plaintiff's motions are denied.

### B. Monell Claims

The City argues it is entitled to partial summary judgment on Plaintiff's Monell claims since "there is no evidence of unconstitutional policies, nor that [the City] engaged in a custom or practice of condoning or ratifying police use of unlawful entries/arrests/excessive force against citizens to the degree of deliberate indifference required to impute liability for constitutional violations." (Defs.' Mot. 2:22-26.) The City's argument is sufficient to satisfy its "initial burden of establishing the absence of a genuine issue of material fact" since it "show[s]—that is, point[s] out to the district court—that there is an absence of evidence to support the nonmoving party's case[.]" Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000) (internal citations omitted). Therefore, Plaintiff must "go beyond the pleadings and identify facts which show a genuine issue for trial." Id. (internal citations omitted).

Plaintiff counters, arguing he can show "the City ratified the

11

unconstitutional conduct of Defendants Wentz and Boyd" and that "[P]laintiff's injuries were due to municipal custom and practice of inadequate training and supervision." (Pl.'s Opp'n 11:19, 2:7-10.) Further, Plaintiff makes the conclusory assertion that "the violations of Plaintiff's rights were due to customs and practices of the City." Id. 15:9. However, this argument appears to be subsumed in Plaintiff's failure to train and supervise claim, and Plaintiff does not specify to which custom or policy he is referring. In its reply brief, the City argues "Plaintiff cannot establish that the policies are unconstitutional or were the moving force behind any purported unconstitutional violation[, and] Plaintiff for the first time argues the final policymaker, who is not a defendant, ratified the alleged respective conduct." (Defs.' Reply 4:21-24.)

Under the Monell doctrine, "[m]unicipalities are considered persons under 42 U.S.C. § 1983 and thus may be liable for a constitutional deprivation." Waggy v. Spokane Cnty. Washington, 594 F.3d 707, 713 (9th Cir. 2010) (internal quotation marks omitted). However, "it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." Id. "It is well established in [Ninth Circuit] precedent that a policy can be one of action or inaction." Id. (internal quotation marks omitted). Here, Plaintiff is alleging a policy of inaction; specifically, "that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional[.]" Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185-86 (9th Cir. 2006).

In order to allege a policy of inaction under Monell, Plaintiff must show:

> (1) that a [City] employee violated the plaintiff's constitutional rights; (2) that the [City] has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights.

Id. at 1186 (citing Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1193-94 (9th Cir. 2002)). Here, the City "assume[s,] *arguendo*, for purposes of this motion only, that Plaintiff[] [has] asserted or would be able to prove an underlying constitutional violation." (Defs.' Mot. 11:19 n.1.) The City argues, however, "Plaintiff has no evidence that this incident was the result of an existing, unconstitutional municipal policy." Id. 12:6-7.

### i. Ratification of the Failure to Investigate

Plaintiff first argues he can show "the [City] ratified [the] unconstitutional [actions of the officers] by failing to adequately investigate the police officers' conduct." (Pl.'s Opp'n 13:7-8 (internal quotation marks omitted).) Specifically, Plaintiff argues "[w]hen informed of [Plaintiff's] serious injuries, no one in the Department pursued any investigation into whether he suffered those injuries while in police custody." Id. 15:1-8.

In its reply brief, the City argues "in opposition to the motion, Plaintiff for the first time argues the final policymaker, who is not a defendant, ratified the alleged respective conduct." (Defs.' Reply 4:22-24.) The City further argues "[w]hen a motion for summary judgment is pending, it is inappropriate to attempt to add [a] new theory, even where a motion for leave to amend a complaint is filed." Id. 4:26-27. However, the Court need not reach this issue, since even assuming, *arguendo*, Plaintiff sufficiently pled ratification of the failure to investigate, Plaintiff fails to produce evidence creating a

13

genuine issue of material fact for trial.

"A municipality . . . can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999). "A plaintiff may show that an official policymaker either delegated policymaking authority to a subordinate or ratified a subordinate's decision, approving the decision and the basis for it." Hyland v. Wonder, 117 F.3d 405, 414 (9th Cir. 1997). "The identification of policymaking officials is a question of state law." St. Louis v. Paprotnik, 485 U.S. 112, 124 (1988). "[U]nder California law, a city's Charter determines municipal affairs . . . ." Hyland, 117 F.3d at 414.

Plaintiff argues "Chief Nichelini[, the Chief of Police,] is a policy maker for [the City] on issues of law enforcement policy and supervision of police officers." (Pl.'s Opp'n 14:3-4.) Under Vallejo City Ordinance 2.10.112, the Chief of Police shall:

> Formulate and implement law enforcement plans, policies and programs[; and] . . .
>
> Make and prescribe such department rules, regulations and orders not in conflict with any applicable federal or state statute, ordinance or civil service rule as he deems advisable, providing for their enforcement and prescribing penalties for violation . . . .

Id. 14:4 n.2. Therefore, since Nichelini is "responsible for establishing final government policy[,]" he is an official policymaker for the City under ratification principles. Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 985 (9th Cir. 2002).

Further, Plaintiff states Lieutenant Nichelman is an official policymaker, arguing that Chief Nichelini "delegated to Lt. Nichelman full reign to initiate internal investigations on his own into incidents such as the injury to [P]laintiff." (Pl.'s Opp'n 14:7-8.) "An official

1  may be found to have been delegated final policymaking authority where
2  the official's discretionary decision is [not] constrained by policies
3  not of that official's making and . . . not subject to review by the
4  municipality's authorized policymakers." Ulrich, 308 F.3d at 986
5  (internal quotation marks omitted). "The question therefore becomes
6  whether the policymaker merely has delegated discretion to act, or
7  whether it has done more by delegating final policymaking authority."
8  Christie, 176 F.3d at 1236.

9  In support of his argument, Plaintiff produces the deposition
10 testimony of Nichelini and Nichelman. Nichelini gave deposition testimony
11 that "[Nichelman] had full reign to open any case he wanted to open" and
12 "the internal affairs division could initiate its own investigations into
13 police officer conduct without a citizen complaint." (Boley Decl., Ex.
14 I 41:6-9, 41:20-25.) Further, Nichelman avers in his deposition: "I
15 receive the reports and read them . . . . That would be the first trigger
16 point of anything that looked in violation of policy." Id. Ex. J 43:5-8.

17 However, it is undisputed that Nichelini drafted the portion
18 of the policy regarding IAD investigations. (Pl.'s SUMF ¶ 47.) Further,
19 Nichelman avers he generally could not "decide to conduct an internal
20 investigation of an incident without consulting somebody else in the
21 department" and "it depends" as to "who made the determination as to
22 whether or not an . . . internal investigation . . . would be made
23 . . . ." (Boley Decl., Ex. J 54:24-55:12.) Although Nichelini gave
24 Nichelman the discretion to open investigations, Nichelman's
25 "discretionary decision[s remain] constrained by policies not of [his]
26 making and . . . [his] decision[s are] subject to review by the [City's]
27 authorized policymakers[.]" Christie, 176 F.3d at 1236-37 (internal
28 quotation marks omitted). Thus, Nichelman is not an official policymaker

under Monell.

Therefore, the City can be held liable if Nichelini, the official policymaker, "ratified a subordinate's decision, approving the decision and the basis for it." Hyland, 117 F.3d at 414. "Accordingly, ratification requires, among other things, knowledge of the alleged constitutional violation." Christie, 176 F.3d at 1239. Plaintiff argues he "has submitted evidence from which it can be inferred that Chief Nichelini was personally involved in discussions regarding Mr. Dagdagan's injuries." (Pl.'s Opp'n 14:4-5.) In support of his argument, Plaintiff relies upon the testimony discussed in the preceding paragraph and produces additional deposition testimony. Nichelman avers in his deposition testimony: "generally as a matter of practice I'm sure this [case] was talked about at the captain's level and most likely in a meeting with the chief. But I don't have a specific recollection, but that would be a matter of practice that at some point an incident like this would be discussed." (Boley Decl., Ex. J 29:13-21.) Further, Nichelini declares "the captains are going to bring to me serious incidents and matters . . . that the newspaper might be interested, that the council might be interested in, and they will tell me about those things maybe on a daily basis. . . . We exchange a lot of information." (Boley Decl., Ex. I 28:11-18.) Relying upon these statements, Plaintiff argues, "the case was likely discussed with the Chief of Police because of the serious injury and the likelihood of litigation." (Pl.'s Opp'n 6:14-16.) However, "[Plaintiff] provided no evidence, in conjunction with his [opposition brief], that [Chief Nichelini] knew of [the officers'] actions [about which he complains] . . . That being so, [Plaintiff] has not established a genuine issue of material fact as to the question whether [Chief Nichelini] ratified [the officers'] actions." Christie,

176 F.3d at 1239.

    **ii. Failure to Train and Supervise**

Further, Plaintiff argues the "evidence establishes triable issues of fact that [the City's] deficiencies in training and supervision subject it to liability under Monell." (Pl.'s Opp'n 15:11-12.) The City rejoins, arguing "there is no evidence the final policymaker was aware of the constitutional injuries and determined to ignore them." (Defs.' Reply 2:9-10.)

"A municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Therefore, Plaintiff bears "the burden of proving both (1) that [Nichelini], the policymaker[,] . . . was deliberately indifferent to the need to train the [officers] . . . and (2) that the lack of training actually caused the . . . violation in this case." Connick v. Thompson, 563 U.S. ----, 131 S.Ct. 1350, 1358 (2011). "To prove deliberate indifference, [Plaintiff needs] to show that [Nichelini] was on notice that, absent additional specified training, it was highly predictable that the [officers] in his office would be confounded by those gray areas and make incorrect [constitutional] decisions as a result. In fact, [Plaintiff has] to show that it was *so* predictable that failing to train the [officers] amounted to conscious disregard for [Plaintiff's constitutional] rights." Id. at 1365 (internal quotation marks omitted). "Mere negligence in training or supervision, however, does not give rise to a *Monell* claim." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).

In order to show a failure to train and supervise, Plaintiff

produces expert reports detailing the alleged "shoddy and incomplete investigations," a 2005 investigation exonerating an officer's decision, and an expert report detailing the "175 separate allegations of improper conduct in the six years preceding the incident." (Pl.'s Opp'n 16:4-12, 8:11-12.) The 2005 investigation report addresses a citizen complaint alleging that "officers illegally entered his home and that unnecessary force was used during his arrest . . . ." (Boley Decl., Ex. Q MSJOPP 0011.) Nichelini reviewed the investigation report and approved the exoneration. Id. MSJOPP 0010. Plaintiff also produces Martinelli's expert report, which states "[a] review of documents as provided by the defendants reveal[s] approximately 135 citizen claims for damages against the City police department revealed a total of approximately 175 separate allegations, including four separate [IAD] complaints from 2001 through the date of the incident." Id. Ex. C, at 5.

However, Plaintiff's evidence does not create a genuine issue of material fact regarding Nicheleni's alleged deliberate indifference since Plaintiff only produces evidence showing allegations and investigations ending in exoneration of the officers. Cf. Koenig v. City of Bainbridge Island, 2011 WL 3759779, at *9 (W.D. Wash. Aug. 25, 2011) ("[The Chief of Police's] agreement with the independent findings that the allegations were 'unsubstantiated' does not rise to the level of ratification of [the officer's] alleged unconstitutional conduct. In other words, [the Chief] did not ratify unconstitutional or wrongful conduct; he ratified conduct he reasonably believed to be appropriate under the circumstances.") Further, the expert reports produced by Plaintiff detailing the alleged incomplete investigations are not relevant to the inquiry of whether Nichelini was on notice of constitutional violations.

Since Plaintiff has not produced evidence to create a genuine issue of material fact as to Nichelini ratifying a subordinate's conduct or being deliberately indifferent to the need to train the officers, Defendant's partial motion for summary judgment on Plaintiff's Monell claims is granted.

## IV. CONCLUSION

For the stated reasons, Defendants' motion for partial summary judgment on Plaintiff's Fourth Amendment claim against Detective Melville and Plaintiff's Monell claims is granted; Plaintiff's substantive due process claim against Defendants Wentz and Boyd is dismissed; and Plaintiff's motions are denied.

Dated: November 18, 2011

_____
GARLAND E. BURRELL, JR.
United States District Judge